# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JAMES FLEMING,

                    Petitioner,

    v.

MATTHEW CATE,

                    Respondent.

_____/

1:09-cv-01765-BAM (HC)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

[Doc. 1]

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented by Allen R. Bloom, Esq.

Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge. Local Rule 305(b).

RELEVANT HISTORY

Following a jury trial in the Tulare County Superior Court, Petitioner was convicted of attempted murder (Cal. Penal Code[1] § 187(a)), assault with a deadly weapon (§ 245(a)(1), spousal rape (§ 262(a)(1)), two counts of forcible oral copulation (§ 288a(c)(2)), two counts of anal and genital penetration with a foreign object (§ 289(a)(1), domestic violence (§ 273.5(a)), criminal threats (§ 422), and false imprisonment by violence (§ 236). The jury found true enhancements that Petitioner inflicted great bodily (§§ 667.61(a), (b), 12022.7(a), 12022.8(a)),

---

[1] All further references are to the California Penal Code unless otherwise indicated.

1  and inflicted great bodily injury under circumstances of domestic violence (§ 12022.7(e)), and

2  that he suffered a prior serious felony conviction, robbery (§§ 211, 667(a)(1), (b)-(i), 1170.12(a)-

3  (d)).

4      Petitioner was sentenced to a determinate term of sixty-eight years in prison, a

5  consecutive to a term of fifty-five years to life, and a consecutive to a term of four years to life.

6      The California Court of Appeal, Fifth Appellate District affirmed the judgment.

7      The California Supreme Court denied review on July 9, 2008.

8      On October 5, 2009, Petitioner filed a petition for writ of habeas corpus in the California

9  Court of Appeal contending that his competency to stand trial should have been decided by a jury

10  instead of the judge, citing Cunningham v. California, 549 U.S. 270 (2007).  The court denied the

11  petition, without prejudice, because Petitioner failed to show that he exhausted his remedy by

12  first presenting his petition to the superior court.

13      On February 24, 2010, Petitioner filed a petition for writ of habeas corpus in the Tulare

14  County Superior Court.  The petition was denied in a reasoned decision on March 1, 2010.

15      On May 11, 2010, Petitioner filed a petition for writ of habeas corpus in the California

16  Court of Appeal, Fifth Appellate District.  The petition was denied on June 10, 2010.

17      Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court

18  on August 30, 2010.  The petition was summarily denied on March 23, 2011.

19      Petitioner filed the instant petition for writ of habeas corpus on October 7, 2009.

20  Respondent filed an answer on August 26, 2011, and Petitioner filed a traverse on September 26,

21  2011.

22  STATEMENT OF FACTS

23      On September 4, 2004, at approximately 3 a.m., Tulare County Sheriff's Deputy Javier

24  Guerrero was dispatched to a call by Petitioner's wife, Janice Fleming, regarding an assault with

25  a deadly weapon on Road 124 in Cutler.  Janice reported that she was bleeding heavily from the

26  head because Petitioner hit her several times with a weight before falling asleep on the couch.

27

28

1  (CT 367-386.)[2]

2      When Deputy Guerrero arrived at the residence, Janice was still on the telephone with

3  911 dispatch.  The front door was unlocked and he entered the house through the rear.  Janice

4  was lying on her back on the kitchen floor, naked and covered in blood from head to toe.

5  Petitioner was sleeping on the couch in the living room and was also naked.  Janice asked for

6  help.

7      Janice had a six inch laceration on her forehead, and she was covered in blood from head

8  to toe with bruising on her eyebrow area, chest, and left forearm.  (RT 128.)[3]  Petitioner had a

9  one inch abrasion on his forehead, and he had blood on his body.  (RT 127, 165-167.)

10      Janice told Guerrero that Petitioner came to the house around midnight, kicked in the

11  front door and went into her bedroom.  (RT 129.)  He was angry because she had obtained a

12  restraining order against him. (RT 130.)  When Janice told him he could not be there, Petitioner

13  said he did not care what they did to him.  (Id.)  Janice told Guerrero that Petitioner "'did

14  everything but rape me.'" (RT 129, 131.)   At one point, Petitioner left the house but later

15  returned.  Janice struck Petitioner in the head with a weight.  Petitioner grabbed the weight from

16  her, and repeatedly hit her head and body, threatening to kill her and himself.  (RT 131.)

17  Petitioner then went to the living room and fell asleep and Janice called 911.  (RT 129-132.)

18      Deputy Guerrero found a zucchini rolled in a towel on a bed, and blood was on the

19  bedspread.  (RT 138.)  A second zucchini was found on the floor of the laundry room.  (RT 158.)

20  There was also a bloodied dumbbell inside a trash can near the rear door.  (RT 140, 151.)

21      Emergency Room Nurse Marlena Schimpf treated Janice just after 4 a.m. at the Kaweah

22  Delta Hospital.  (RT 170-171.)  Janice told the nurse that Petitioner hit her with "weights and

23  other unknown objects" and he had "penetrated [her] but he couldn't keep it up."  (RT 172-173.)

24  She had multiple lacerations to her head and body, bruises on her chest, wrists, and all over her

25  body, and blood stains from head to toe.  (RT 173.)

26

27      [2] "CT" refers to the Clerk's Transcript on Appeal.

28      [3] "RT" refers to the Reporter's Transcript on Appeal.

1    Registered Nurse Mary Stanton conducted a sexual assault examination on Janice. (RT

2    391, 395.) Janice told the nurse that Petitioner "attempted to penetrate her vagina with his penis

3    several times." (RT 401-402.) Janice also said that Petitioner threatened to penetrate her anus

4    with his penis, a zucchini and a flashlight, and attempted to penetrate her vagina with a zucchini

5    and flashlight. (RT 402.) Petitioner forced his penis in her mouth, orally copulated her genitals,

6    and penetrated her anus with his fingers. (RT 402.) Janice was never rendered unconscious

7    during the incident. (RT 398-399.)

8    Nurse Stanton found swelling, bruising, and redness in Janice's genital area. (RT 414-

9    415.) Abrasions and redness were found inside the labia minora and it was "very swollen and

10   edematous on the right side." (RT 419.) The injuries were "[c]onsistent with forced entry of a

11   penis[]" and forced entry of fingers and a zucchini. (RT 419-420, 422.) The injuries were

12   consistent with Janice's report of the incident. (RT 424-425.)

13   At trial, Janice testified that she had been married to Petitioner since 1987. Petitioner was

14   a Vietnam veteran and was being treated with a variety of psychiatric medications. (RT 190,

15   258-261.) Janice testified to a different version of the incident at trial. She testified that she was

16   not sure how she was injured because she hit a wall and a metal stool on her service porch. (RT

17   180.) She claimed that Petitioner fell on top of her and that was the only contact he had with her.

18   (RT 181.) She claimed they were both naked because they had just returned from swimming and

19   they slipped at the house which caused her injuries. (RT 181.) She claimed to have called 911

20   because Petitioner passed out on the couch after taking his medication. (RT 182.) She also

21   stated that she obtained a restraining order against Petitioner in an attempt to stop him from

22   hanging around his friends who drank alcohol with him. (RT 185.)

23   She said she had "no idea" what she told detectives about her injuries. (RT 188.) She

24   also claimed to bruise very easily because she was taking a lot of medication. (RT 188.)

25   Because she had taken a lot of medication that night she was not sure exactly what happened.

26   (RT 191.) She denied that Petitioner hit her with anything other than his body when they fell and

27   claimed the weight was in his hand when he fell. (RT 211-212.) She also testified that Petitioner

28   did not do anything to her sexually against her will. (RT 219.) She did not recall whether

4

1    Petitioner put his penis in her vagina and she claimed Petitioner was unable to have sex.  She

2    also denied that Petitioner tried to insert a zucchini or flashlight into her vagina.  (RT 219-220.)

3

4        Janice testified that they "attempted all possible ways of achieving the sexual act that he

5    and I tried to do, and I was tired and wanted to quit, and he didn't, and I was mad at him because

6    he wouldn't quit." (RT 233.)  "It was mutual . . . but not accomplished." (RT 233.)  She also

7    claimed that she hit him on the head with a dumbbell because she wanted to quit trying to have

8    sex and he wanted to keep trying.  (RT 234-235.)  She attributed the red mark on her mouth to

9    attempting to have sex stating, "it can be a little uncomfortable when it's a little forceful.  But it's

10   not that you're being raped or whatever."  (RT 243.)

11       Janice's trial testimony also conflicted with what she told Detective Gary Hunt, who

12   interviewed her in the emergency room that morning.  She told Hunt that Petitioner hit her with

13   his head, hands, and weight because she obtained a restraining order against him.  (RT 376-377.)

14   She was afraid of Petitioner so she grabbed the dumbbell and tried to hit him but he grabbed it

15   from her and beat her with it.  (RT 380.)  Petitioner pulled her hair and tried to force her to orally

16   copulate him, and he "put his penis in her vagina at least one time." (RT 378.)  Petitioner was

17   having difficulty maintaining an erection.  (RT 378.)  He put his fingers in her vagina and anus

18   but had difficulty putting his penis in her anus.  (RT 378.)  She told the detective all of these

19   sexual acts were forced and against her will.  (RT 377-378.)

20   Defense

21       Avak Howsepian, M.D., a Veterans Administration psychiatrist and expert in the area of

22   post traumatic stress disorder, schizophrenia, bipolar disorder, and depression, diagnosed

23   Petitioner with multiple psychiatric diagnoses including, post-traumatic stress disorder, pain

24   syndrome, prolonged bereavement, adult antisocial behavior, and history of childhood physical

25   abuse.  (RT 296-297.)  Mr. Howsepian also diagnosed Petitioner with several physical disorders.

26   (RT 297.)

27       Petitioner claimed to have no recollection of what he did to his wife.  (RT 304.)  Mr.

28   Howsepian believed that Petitioner may have post traumatic stress disorder from his service in

1    Vietnam and physical abuse as a child.  Mr. Howsepian believed Petitioner's post-traumatic

2    stress disorder played a role in the incident, but there was no evidence that he was unaware that

3    he was assaulting his wife at the time it was occurring.  (RT 327.)

4                                          DISCUSSION

5    I.     Jurisdiction

6           Relief by way of a petition for writ of habeas corpus extends to a person in custody

7    pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

8    or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

9    529 U.S. 362, 375 (2000).  Petitioner asserts that he suffered violations of his rights as

10   guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Tulare County

11   Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a);

12   2241(d).

13          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

14   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

15   enactment.  Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th

16   Cir. 1997), cert. denied, 522 U.S. 1008 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769

17   (5th Cir.1996), cert. denied, 520 U.S. 1107 (1997).  The instant petition was filed after the

18   enactment of the AEDPA and is therefore governed by its provisions.

19   II.    Standard of Review

20          Where a petitioner files his federal habeas petition after the effective date of the Anti-

21   Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that

22   the state court's adjudication of his claim:

23          (1) resulted in a decision that was contrary to, or involved an unreasonable
            application of, clearly established Federal law, as determined by the Supreme
24          Court of the United States; or
            (2) resulted in a decision that was based on an unreasonable determination of the
25          facts in light of the evidence presented in the State court proceeding.

26
27   28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d)

28   unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly

                                                6

1   established in the holdings of [the Supreme] Court." <u>Harrington v. Richter</u>, __ U.S. __, 131 S.Ct.

2   770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and <u>Williams v. Taylor</u>, 539 U.S. 362, 412

3   (2000). Habeas relief is also available if the state court's decision "involved an unreasonable

4   application" of clearly established federal law, or "was based on an unreasonable determination

5   of the facts" in light of the record before the state court. <u>Richter</u>, 131 S.Ct. 785 (citing 28 U.S.C.

6   § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to

7   the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant

8   state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412. Therefore, a "specific" legal rule

9   may not be inferred from Supreme Court precedent, merely because such rule might be logical

10  given that precedent. Rather, the Supreme Court case itself must have "squarely" established that

11  specific legal rule. <u>Richter</u>, 131 S.Ct. at 786; <u>Knowles v. Mirzayance</u>, __ U.S. __, 129 S.Ct.

12  1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule

13  to the "context" in which the Petitioner's claim falls. <u>Premo v. Moore</u>, __ U.S. __, 131 S.Ct.

14  733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state

15  court adjudicated the claim on the merits. <u>Cullen v. Pinholster</u>, __ U.S. __, 131 S.Ct. 1388, 1398

16  (2011). "A state court's determination that a claim lacks merits precludes federal habeas relief so

17  long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

18  <u>Richter</u>, 131 S.Ct. at 786.

19      "Factual determinations by state courts are presumed correct absent clear and convincing

20  evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

21  and based on a factual determination will not be overturned on factual grounds unless objectively

22  unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

23  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254

24  apply to findings of historical or pure fact, not mixed questions of fact and law. <u>See</u> <u>Lambert v.</u>

25  <u>Blodgett</u>, 393 F.3d 943, 976-77 (2004).

26      Courts further review the last reasoned state court opinion. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501

27  U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an

28  explanation, the habeas petitioner's burden still must be met by showing there was no reasonable

1 | basis for the state court to deny relief." <u>Richter</u>, 131 S.Ct. at 784.

2

3

4 | III.    <u>Violation of Right To Jury Trial</u>

5 |         Petitioner contends that his due process rights were violated when his competency to stand

6 | trial was determined by the judge and not the jury.

7 |         1.      <u>Last Reasoned Decision by State Court</u>

8 |         The Tulare County Superior Court denied the claim presented in a state habeas corpus

9 | petition, stating:

10 |              Petitioner contests the fact that the petitioner submitted to the judgment of
11 |       the court instead of going forward with a jury trial on the issue of competency
        pursuant to Penal Code Section 1368.

12 |              Petitioner was scheduled for a jury trial regarding his competency in case
        number 13346.  After review of the doctor's reports the petitioner submitted to a
13 |       court trial on the issue of competency.

14 |              The state of the law is that an attorney can waive the right to a jury trial on
        behalf of his client in a competency hearing even over his client's objection.
15 |       *People v. Masterson* (1994) 8 Cal.4th 965, 972.

16 |              The court in *Masterson* stated:

17 |                      "The sole purpose of a competency proceeding is to
                determine the defendant's present mental competence, i.e. whether
18 |             the defendant is able to understand the nature of the criminal
                proceedings and to assist counsel in a rational manner.  Because of
19 |             this, the defendant necessarily plays a lesser personal role in the
                proceeding than in a trial of guilt.  How can a person whose
20 |             competence is in doubt make basic decisions regarding the conduct
                of a proceeding to determine that very question.

21 |

22 |              This extends to the fundamental decision whether to hold a competency
        hearing at all.  The United States Supreme Court has recognized that "it is
        contradictory to argue that a defendant may be incompetent, and yet knowingly or
23 |       intelligently waive his right to have the court determine his capacity to stand trial[.]
        There is authority that if the attorney doubts the present sanity of his client, he may
24 |       assume his client cannot act in his own best interests and may act even contrary to
        the express desires of his client. . . ." *Shephard v. Superior Court* (1986) 180
25 |       Cal.App.3d 23, 29[.]

26 |              Petitioner claims that ruling of the California Supreme Court was wrongly
        decided and that this court should overturn that court decision.
27 |

28 |              It is clear that the right to a jury trial is the right ensured by Penal Code
        Section 1368.  The petitioner waived that right and elected to go with a court trial.

The petitioner cannot now claim that he actually wanted a jury trial after the court has ruled against him.  That is clearly the intent of the case law that applies to this case.

Accordingly, the writ of habeas corpus filed by petitioner is denied.

(Lod. Doc. 9.)

Because the California Court of Appeal denied the claim with a list of citations, including to Masterson, which is consistent with the reasoning from the Superior Court's ruling on the merits, the Superior Court's ruling is the last reasoned decision on this issue.  See e.g. Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)

2.    Analysis of Merits

The Superior Court reasonably found that Petitioner waived any jury trial rights he had regarding the determination of his competency.  The record supports the state court's determination that when the issue involves the defendant's competence to stand trial, his attorney may make the strategic decision to waive a jury trial on the issue.  See People v. Masterson, 8 Cal.4th 965, 974 (1994) (the person whose competence is in question cannot be entrusted to make basic decisions regarding the conduct of that proceeding.  Counsel may waive a jury trial in a proceeding to determine whether the defendant is competent, even over his objection); People v. Montoya, 86 Cal.App.4th 825, 829 (2001) ("In proceedings that are neither civil nor criminal, but 'special proceedings,' such as a competency hearing, the right to a jury trial may be waived by counsel, even over defendant's express objection."); People v. Otis, 70 Cal.App.4th 1174, 1177 (1999) (counsel may waive a jury trial over defendant's objections because defendant may not be sufficiently competent to determine their own best interests.).  Indeed, if the trial court were required to advise and elicit an express waiver of the jury trial right, the court would in most likelihood be required to hold an initial hearing to determine if the defendant was capable of making the decision regarding his competency hearing.  Petitioner has not cited nor is this Court aware of any clearly established Supreme Court precedent requiring the trial court to specifically advise and elicit an express waiver of the jury trial right in a competency hearing, and contrary to Petitioner's argument this Court cannot apply a general rule to the case at hand.  As previously

1  stated, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because

2  such rule might be logical given that precedent.  Rather, the Supreme Court case itself must have

3  "squarely" established that specific legal rule.  <u>Harrington v. Richter</u>, 131 S.Ct. at 786; <u>Knowles v.</u>

4  <u>Mirzayance</u>, 129 S.Ct. at 1419.  In addition, the Supreme Court itself must have applied the

5  specific legal rule to the "context" in which the Petitioner's claim falls.  <u>Premo v. Moore</u>, 131

6  S.Ct. at 737.[4]  Accordingly, this Court, on habeas corpus review, cannot disturb the state court's

7  reasonable determination, and habeas corpus relief is foreclosed.

8          3.       <u>Procedural Bar</u>

9          The California Court of Appeal went beyond the Superior Court's ruling and found the

10 claim to be procedurally barred for failing to raise it on direct appeal when it could and should

11 have been raised.  (Lod. Doc. 11.)  Petitioner did not present this claim on direct appeal and a

12 claim his appellate counsel's failure to brief the issue was itself an independent ground for

13 constitutional relief.  <u>Cockett v. Ray</u>, 333 F.3d 938, 945 (9th Cir. 2003) (citing <u>Murray v. Carrier</u>,

14 477 U.S. 478, 488-489 (1986)).  Petitioner attempts to demonstrate cause by faulting counsel on

15 direct appeal for failing to present the claim despite Petitioner's request to do so.  Although an

16 ineffective assistance of counsel claim may serve as a basis for applying the cause and prejudice

17 exception, it can do so only if the ineffective assistance of counsel claim itself was exhausted in

18 the state courts as an independent constitutional claim.  <u>Murray v. Carrier</u>, 477 U.S. at 489.

19 Because Petitioner failed to present the ineffective assistance of counsel claim to the state courts,

20 the cause exception is not applicable.  Thus, independent of the fact the claim fails on the merits,

21 it is also procedurally defaulted.

22 IV.    <u>Insufficient Evidence To Support Conviction For Rape</u>

23         Petitioner contends there was insufficient evidence to support his conviction of rape.  In

24

25         [4] To the extent Petitioner argues the State bears the burden of proof to determine a defendant's competence,
26 he is mistaken.  Under California law, it is the defendant who bears the burden of establishing lack of competence,
   and such holding is not contrary to federal law.  <u>See</u> <u>Medina v. California</u>, 505 U.S. 437, 446 (1992), upholding
27 <u>People v. Medina</u>, 51 Cal.3d 870, 881 (1990).

28                                                      10

the last reasoned decision, the California Court of Appeal denied the claim stating:

> As relevant to this appeal, one of the counts upon which defendant was convicted was spousal rape, a violation of Penal Code section 262, subdivision (a)(1).  Defendant's only contention on appeal is that there was insufficient evidence to support his conviction on this charge and that we should reduce the conviction to attempted spousal rape.  He says the prosecution failed to establish defendant accomplished sexual intercourse with the victim.

> Sexual intercourse, as the jury was instructed, consists of "any sexual penetration, however slight" (Pen. Code, § 263) sexual intercourse does not require that the assailant's penis enter the victim's vagina." (*People v. Karsai* (1982) 131 Cal.App.3d 224, 232.) [N.1]

> > [N.1] *People v. Karsai*, *supra*, 131 Cal.App.3d 224 was disapproved on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, footnote 8.]

> On review of the sufficiency of the evidence to support a conviction, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence - - that is, evidence which is reasonable, credible, and of solid value - - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom.  (*In re James D*. (1981) 116 Cal.App.3d 810, 813.)

> In this case, the victim told an emergency room nurse that defendant "penetrated me but couldn't keep it up."  The victim told the investigating detective in an interview about an hour after [] her call to 911 that defendant "put his penis in her vagina at least one time.  He was trying to do that, but he was having problems maintaining an erection." She told the nurse who performed a sexual assault examination the next morning that defendant "attempted to penetrate her vagina with [his] penis several times."  Defendant does not contend this evidence was improperly admitted nor that the jury could not have believed the truth of the statements.  Indeed, defendant does not contend that the jury was not permitted to disbelieve the victim's wholly inconsistent testimony at trial (the sex was consensual and she hit her head on a table when she slipped on the kitchen floor).

> Defendant, however, discounts the foregoing as "isolated bits of evidence" that a jury could not reasonably have believed in light of the other evidence.  The "other evidence" to which he points is a second interview with the detective, conducted about five hours after the first interview, in which the victim said defendant "proceeded to try to do something, but was un-capable of doing it."  Not only is this statement inconclusive about penetration of the victim's external genitalia, but the jury could well have rejected this statement as the beginning of the victim's false recantation of her earlier accusations against defendant.  Defendant also relies on an erroneous rephrasing of the victim's statement to the sexual assault nurse, claiming the victim said defendant "only attempted to penetrate her genitalia."  In light of the issue raised by defendant on appeal, it is not persuasive to base an argument on a rephrasing that disregards the difference between "attempting to penetrate the vagina" and "attempting to penetrate the

1  genitalia."

2      We conclude the victim's repeated statements in her initial interviews
3  constitute substantial evidence of penetration for conviction of spousal rape.

4  (Lod. Doc. 3 at 2-3.)

5      The law on insufficiency of the evidence claim is clearly established.  The United States

6  Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a

7  federal court must determine whether, viewing the evidence and the inferences to be drawn from

8  it in the light most favorable to the prosecution, any rational trier of fact could find the essential

9  elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

10  Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

11     Although Petitioner's wife attempted to disclaim any wrongdoing on Petitioner's part, the

12  jurors obviously found her out-of-court statements to be true.  The jury was presented with

13  evidence in the form of the 911 tape recording, the victim's report of the assault to the nurses and

14  detectives, and the physical evidence, all of which supported the jury's finding that Petitioner

15  committed spousal rape.  In closing argument, the prosecutor cited this evidence and argued:

16      [Petitioner] had sexual intercourse.  Well, we got back to that - - let's first -
- what did she say to . . . Deputy Guerrero?  She said to him, "He did everything
17  but rape me."  And I told you when I first talked to you in my opening statement
that Janet isn't an attorney, she doesn't know the law here.  What the judge read to
18  you was the law.  And any penetration is enough.  Ejaculation isn't required.  And
he doesn't need to stay erect.  But what did she then tell ER Nurse Marlena
19  Schimpf? . . . Marlena Schimpf wrote, as she testified, "Patient was apparently
assaulted with multiple different objects including weights to head and body.
20  Patient also states she was sexually assaulted."  Quote, "He penetrated me but
couldn't keep it up."  That's element one.  "Patient has multiple lacerations,
21  describes her injuries.  Patient states her ex-husband is mad at her because he
found out she got a restraining order against him."  So that's [element] 1. [¶] And
22  she then says the same thing to Detective Hunt, that he penetrated her vagina with
his penis.  They were married.  Look at the photos.  Look at what we just looked at
23  from the transcript.  That's not a woman consenting, trying to get out of bed, stuck
in bed for an hour doing anything she can to even get a cigarette and get away, and
24  then we have Mary Stanton come in here and talk about how the thin lining of skin
is sheared off the inner part of her vagina and it's swollen to a degree that's just
25  totally abnormal.  Blunt force and trauma.  Accomplished by force, violent, or fear
of injury.  Look at her body.  What does she say that he's doing to her from the
26  minute he gets into bed?  Grabbing her wrists, grabbing her ankles.  That's what
she said in the transcript to Detective Hunt. [¶] I mean, ladies and gentlemen, the

27

28                            12

defendant and Janice are found naked in the house.  He's got blood on him.  She's laying on the ground in blood.  That's force.  That's not consent or anything that happened before it was not consent, according to what we learned from Detective Hunt . . . . [¶] Now, Janice may think just because defendant could not keep up an erection or was not able to ejaculate he had not committed rape, but we know now applying the evidence that we have - - and that is the evidence - - that that crime was committed.  One penetration is all it takes.  If there's multiple penetrations each time, you can go on and charges counts as far as you want.  But we have at least one penetration in this case. [¶] Element 2 can't be disputed. [¶] Element 3, again, she didn't consent.  Look at the photos.  And it's accomplished by fear or force.  Do you - - is that a woman there that consented to sexual intercourse that night?  No. Right before she's pulled out of there, is that a woman that consented to sexual intercourse laying in blood?  No.  Just look at the photos. [¶] So I ask you to convict the defendant of Count 3.

(RT 507-510.)

There is no basis for Petitioner's claim that there was insufficient evidence to support his conviction of rape, and the state courts' determination that the jury was free to settle the dispute by choosing what seemed to them to be the most reasonable inference was not contrary to or an unreasonable application of clearly established federal law.  Only when there is a complete absence of probative facts to support the conclusion reached does reversible error appear.  But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion.  See Jackson, 443 U.S. at 319 (it is the jury's responsibility "to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."); see also United States v. Scheffer, 523 U.S. 303, 313 (1998) (among the duties of the jury is to assess witness credibility).  Accordingly, habeas corpus relief is foreclosed.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.    The instant petition for writ of habeas corpus is DENIED;

2.    The Clerk of Court is directed to enter judgment in favor of Respondent; and

3.    The Court declines to issue a certificate of appealability.  28 U.S.C. § 2253(c);

Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where the

13

applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"; <u>Hoffman v. Arave</u>, 455 F.3d 926, 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."


        IT IS SO ORDERED.

**Dated:   October 27, 2011**          _____**/s/ Barbara A. McAuliffe**_____
                                              UNITED STATES MAGISTRATE JUDGE